

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-1996

# United States v. Jenkins

Precedential or Non-Precedential:

Docket 95-1606

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Jenkins" (1996). *1996 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 95-1606


UNITED STATES OF AMERICA

v.

SEAN JENKINS

Appellant


On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 94-cr-00385-2)


Argued:  March 11, 1996

BEFORE:  STAPLETON, SCIRICA and COWEN, Circuit Judges

(Opinion Filed  July 26, l996)


(Argued)

Attorney


Appellee




Defender


Philadelphia

Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant U.S. Attorney
William B. Carr, Jr.

Assistant U.S. Attorney
Office of the U.S.

615 Chestnut Street
Philadelphia, PA  19106
         Attorneys for


Robert Epstein (Argued)
Assistant Federal

Elaine DeMasse
Senior Appellate Counsel
Maureen Kearney Rowley
Chief Federal Defender
Defender Association of

Federal Court Division

437 Chestnust Street,

Suite 800

Lafayette Building
Philadelphia, PA  19106
                    Attorneys for

Appellant


OPINION OF THE COURT



STAPLETON, Circuit Judge:


        Sean Jenkins appeals his conviction on drug possession and related firearms charges.  He challenges the sufficiency of the evidence to establish his constructive possession of drugs found near him.  Because the evidence showed only that he was in an acquaintance's apartment physically near but not in actual possession of drugs and drug distribution paraphernalia, it does not support the jury's finding that he had dominion and control over the drugs.  We will, therefore, reverse Jenkins' conviction on all counts.

                                I.
        Around 1:30 a.m. on February 10, 1994, Philadelphia police officers Michael Kopecki and James Santomieri responded to a call that shots were being fired near an apartment building. Entering the courtyard of the building, the officers saw Kevin Jones and Larry Harrison, who was holding a handgun.  Kopecki yelled, "Police!"  Harrison ran into the building, and the officers chased him through a fire escape door, down a hallway, and into apartment C-107.  The front door opened into the living room, and the officers found Sam Stallings and Jenkins seated on a couch, both wearing only boxer shorts and a t-shirt.  On the coffee table before them were three bags of white powder containing a total of 55.3 grams of cocaine and 42 grams of non-cocaine white powder, two triple-beam scales, two loaded .38 caliber revolvers, small ziplock-style bags, clear plastic vials, and numerous red caps.  On the floor was a loaded sawed-off shotgun.
        None of the cocaine powder had been put in the bags, vials, or caps, and there was no evidence that either man had been working with the cocaine.  No grinders, razor blades, or other "cutting" implements, were on the table, and no pots or other instruments that could be used to cook cocaine were found with any cocaine residue.  No cocaine residue was found on Stallings or Jenkins, including their hands, and no residue was found on the scales.  Nothing concerning Jenkins' clothing suggested any connection to the drugs.  Finally, he made no attempt to hide or destroy the contraband, and fully cooperated

with the officers.

Stallings and Jenkins were charged and tried together. Count I of the indictment charged them with possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1), and aiding and abetting under 18 U.S.C. 2. Count II charged them with use of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. 924(c), and aiding and abetting. At trial, the officers testified to what they saw and found, as described above. An expert witness, DEA agent Ellis Hershowitz, testified that the scales, bags and vials were commonly used by drug traffickers in repackaging drugs for resale. On cross-examination, Hershowitz acknowledged that instruments necessary to cut and apportion the cocaine and insert it into the various packages were not found in the apartment. The manager of the apartment building, Barbara Edward, identified Stallings as a tenant in C-107, Harrison as someone who lived there, and Jenkins as someone who was "in and out" with Stallings and Harrison. Neither defendant testified.

The jury found Jenkins guilty on both counts. He made a post-trial motion for judgment of acquittal or new trial. Although recognizing that proximity to contraband or association with someone in possession is by itself insufficient to find constructive possession, the court denied the motion. It found three factors from which a jury could infer dominion and control: (i) Jenkins was not merely in the same apartment as the drugs, but was sitting on a couch immediately adjacent the table on which the drugs were found; (ii) while there was no evidence that Jenkins was a resident of the apartment, he was in his boxer shorts and a t-shirt at 1:30 a.m., which suggests that he was going to stay overnight or had been there for some time; and (iii) there were two triple-beam scales, from which it could be inferred that Stallings and Jenkins were each going to use a scale. The court sentenced the defendant to nearly 12 years imprisonment.

## II.

In reviewing a jury verdict for sufficiency of the evidence, we view the evidence in the light most favorable to the government, and we will affirm the conviction if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See United States v. Brown, 3 F.3d 673, 680 (3d Cir.), cert. denied, 114 S. Ct. 615 (1993). The district court had jurisdiction pursuant to 18 U.S.C. 3231, and we have jurisdiction pursuant to 28 U.S.C. 1291. The notice of appeal was timely filed.

## III.
### A.

The government had no evidence of actual possession of the cocaine powder; consequently, the issue before us is whether there was evidence sufficient to establish constructive possession. Under our precedent, the evidence must show that Jenkins had dominion and control over the drugs:

[T]he government must submit sufficient

> evidence to support an inference that the individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence." United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (citations omitted) . . . .

Brown, 3 F.3d at 680. The kind of evidence that can establish dominion and control includes, for example, evidence that the defendant attempted to hide or to destroy the contraband, seeUnited States v. Davis, 461 F.2d 1026, 1034–36 (3d Cir. 1972), or that the defendant lied to police about his identity or the source of large amounts of cash on his person, see United States v. Brett, 872 F.2d 1365, 1368–69 (8th Cir.), cert. denied, 493 U.S. 932 (1989). Dominion and control are not established, however, by "mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property." Brown, 3 F.3d at 680; see also United States v. Dunlap, 28 F.3d 823, 826 (8th Cir. 1994); United States v. Zeigler, 994 F.2d 845, 848 (D.C. Cir. 1993); United States v. Vasquez–Chan, 978 F.2d 546, 550 (9th Cir. 1992).

Jenkins argues that the evidence relied upon by the court was insufficient to prove dominion and control over the cocaine. Nothing but proximity links him to the drugs and drug distribution paraphernalia. No cocaine residue was found on him, nor were his fingerprints found on the drugs. His prior acquaintance with Stallings answers why he was in the apartment, and it is immaterial how long he had been or was going to be there. The presence of the two scales, he contends, is insufficient to link him to the drugs. No evidence suggests that they had been in use or were about to be used by him; if anything, it was more likely that the two scales belonged to and would be used by the two residents of the apartment.

We agree with the defendant that the evidence is insufficient to establish his possession of the cocaine. The evidence does show that he is an acquaintance of Stallings and Harrison and that he was found physically near drugs and drug distribution paraphernalia, including two scales, but those are insufficient facts from which to infer dominion and control over the drugs.

We find this case controlled by our decision in United States v. Brown. The police, acting on a tip, searched Brown's home for drugs. During the search, Ama Baltimore arrived at the house, inserted a key into the lock, and was arrested as she entered. While being arrested, she protested, "But you can't arrest me because I am in my own house." In the upstairs sewing room, the police found a pair of shorts and a switchblade, both of which Baltimore admitted were hers. Substantial quantities of

heroin, cocaine powder, and crack cocaine were found in the refrigerator in the kitchen, the kitchen closet, and one of the upstairs bedrooms. Equipment and supplies to prepare, cook, cut and distribute the drugs were also found in the bedroom. The government contended that several facts were sufficient to establish Baltimore's possession of the drugs: her possession of a key to the house, her attempted entry, the presence of the shorts and switchblade in the house, her statement, and the fact that the house was a known "cut house," a place where large quantities of drugs are cut and distributed.

We overturned her conviction for insufficient evidence of possession. The evidence showed that she had access to or resided in the house and knew of the presence of the drugs, but did not show she had dominion and control them. The key, her attempted entry, and her statement merely showed that she had some control over the house, not the drugs. See 3 F.3d at 682–83. We further noted that her fingerprints were not found on the drugs or drug paraphernalia, and there was no evidence that she ever exerted any indirect control over them. See id. Evidence in addition to knowledge of and access to the drugs was necessary to prove possession. The fact that Brown's home was a "cut house" did not suffice as additional evidence. Because Brown's house was also a residence, the jury could not infer from the fact that Brown's home was a "cut house," that beyond a reasonable doubt, Baltimore was a participant in the drug distribution operation. See id. at 683–84.

The government stresses that in Brown we noted that Baltimore and her shorts were not found in the same room as any of the drugs. See 3 F.3d at 683. The government contends that this factor was highly relevant to our decision, but we disagree. It is a serious misreading of that decision to conclude that the degree of proximity of Baltimore or her clothing to the drugs was a controlling factor. Although our decision does not discuss this point in detail, Baltimore acknowledged at the time of her arrest that she lived in the cut house, and in the course of residing there, it is virtually certain that she regularly would have entered the kitchen and bedroom, the rooms in which the drugs were found. Since we concluded that her residence in the cut house was insufficient to prove dominion and control over the drugs, it would not have mattered if there had been evidence that she had visited the kitchen or bedroom, so long as the evidence did not also show that her visit pertained to the drugs.

Our decision in Brown is consistent with the jurisprudence of other circuits. In United States v. Vasquez–Chan, the Court of Appeals for the Ninth Circuit found evidence of drug possession insufficient even though there was proof that the defendant had access to and was in close proximity with large quantities of drugs. Drug Enforcement Agency officers arranged the purchase of a large amount of cocaine. They observed the drugs being transported from a particular house and went to secure the residence. Inside, they found two women, a housekeeper and an apparent house guest, Julia Gaxiola–Castillo (Gaxiola). Gaxiola waived her rights and told the officers that she was a friend of the housekeeper and had been staying there a

few weeks with her infant child.  In the bedroom where she had been staying, the officers found 600 kilograms of cocaine in 55 gallon drums.  On six of the drums, including the inside of the lid of one drum, they found her fingerprints.  She was convicted of conspiracy to possess narcotics with intent to distribute.

The Ninth Circuit overturned the conviction for lack of evidence of possession.  She claimed that she had come to visit her friend, and she and her child had to sleep somewhere, and the bedroom with the cocaine may have been the only place to stay.  Although the defendant had been caught in "extremely incriminating circumstances" due to her proximity to the drugs, her behavior "was perfectly consistent with that of an innocent person having no stake or interest in the transactions."  978 F.2d at 551 (citations omitted).  Proximity and knowledge of the existence and location of the drugs were insufficient to prove dominion and control.  See id.  The fingerprints by themselves proved nothing but the fact that she had used the bedroom.  It was perfectly reasonable to believe that she would have come into contact with the numerous canisters as she moved in and out of the room, or prepared a place to sleep.  See id.

Similarly, in United States v. Dunlap, the Court of Appeals for the Eighth Circuit found proximity to drugs under very suspicious circumstances insufficient to support a finding of possession.  Acting on a tip that drugs were being sold from Eric Dunlap's apartment, police officers secured a search warrant.  As they approached his door, Dunlap opened the door from the inside.  Standing behind Dunlap was Cornelius Coleman, who had a handgun in his pocket.  In the kitchen, the officers found large amounts of cocaine power and cocaine base, and some of the powder was in the process of being cooked.  Coleman's hat was also in the kitchen, and more drugs and drug distribution paraphernalia were found in the apartment.  Coleman was convicted of possession with intent to distribute cocaine.

The Eighth Circuit overturned his conviction because the evidence was not sufficient for a jury to find beyond a reasonable doubt that Coleman had constructive possession.  See 28 F.3d at 826.  His mere presence in the apartment, including the evidence that he may have been in the kitchen, did not prove that he possessed the cocaine.  He may have been visiting Dunlap to purchase cocaine for his own use, an offense not charged, and it was speculative for the jury to conclude beyond a reasonable doubt that he possessed the drugs, or intended to aid and abet Dunlap in his drug operation.  See id. at 827.

The evidence supporting constructive possession in Sean Jenkins' case is no stronger than the evidence found insufficient in Brown, Vasquez-Chan, and Dunlap.  In each of those cases, the evidence did not establish the decisive nexus of dominion and control between the defendant and the contraband.  The district court believed that Jenkins' being on the couch next to the drugs was decisively different than if he was somewhere else in the apartment, but proximity alone is not enough, no matter how near that proximity is.  Without other proof of dominion and control, we can only conclude that it was sheer happenstance that Jenkins was seated on the couch next to the cocaine when the police

entered the apartment. Whether or not he possessed the drugs, he could have been found sitting on the couch, standing next to it, in the bathroom, or in some other room in the apartment. A reasonable jury may not infer dominion and control beyond a reasonable doubt from the defendant's physical distance from the drugs alone.

Jenkins' presence near the drugs in his acquaintance's apartment is analogous to Baltimore's control over the cut house and access to the drugs, Gaxiola's proximity and contact with the drugs, and Coleman's proximity to drugs and drug activity. Some additional evidence of dominion and control is required before a finding of constructive possession can be made beyond a reasonable doubt. We do not believe that Jenkins' being in boxer shorts and a t-shirt or the fact that two scales were on the table can raise the necessary inference. That he had been in the apartment long enough to get partially undressed and that he was planning to stay for some time tell us nothing about what he had been doing or what he planned to do. We do not know who brought the drugs and equipment into the apartment, or who set up the items on the coffee table. No fingerprint evidence connected him with the items on the coffee table, the drug distribution paraphernalia were not in use, and no cocaine residue was found on him. Perhaps most important, as agent Hershowitz testified, the cutting and repackaging of the cocaine could not have been imminent for lack of tools to cut, apportion and package the powder. Under these circumstances, a reasonable jury could not conclude from Jenkins' state of undress that, beyond a reasonable doubt, he had dominion and control over the drugs and intended to participate in the distribution of the cocaine at some point that night.

The existence of two scales rather than one adds very little to the evidence against Jenkins. It does suggest that someone in addition to Stallings would have participated in the drug cutting and repackaging that night, if such activity were to occur. As we have concluded, however, there is no evidence that the drug activities were imminent; consequently, it would be impermissible to infer beyond a reasonable doubt that it was Jenkins who would have helped Stallings rather than Harrison or Jones, both of whom resided in the apartment.

The government relies on our decisions in United States v. Davis, 461 F.2d 1026 (3d Cir. 1972) and United States v. Iafelice, 978 F.2d 92 (3d Cir. 1992). In both cases, however, there were significant and substantial factors linking the defendants to the drugs. In Davis, the defendant was convicted for possessing heroin that had been seized in her apartment. Unlike the instant case, in Davis the evidence clearly showed that someone had been recently packaging the drugs, and when the police forced their way in, the persons present, including the defendant, had tried to destroy the drugs. 461 F.2d at 1036-38. Here, Jenkins was in an acquaintance's apartment and no evidence suggests that he had recently physically interacted with the drugs or drug paraphernalia. Neither did he attempt to hide or destroy the drugs. In Iafelice, the defendant drove several individuals in his car to a pre-arranged drug sale to undercover

agents, and was convicted for possession of heroin. We upheld the conviction and found relevant that he drove the car in a suspicious manner, transported the drugs and those who sold the drugs to the point of sale, assisted in opening the trunk where the drugs were located, and was called in the car by one of the principal drug dealers during the sale. See Iafelice, 978 F.2d at 95-98. Here, the cocaine was not found in Jenkins' residence, and no evidence suggests his active participation in any drug distribution.

A sufficiency of the evidence challenge requires us to take a careful look at the evidence in the light most favorable to the government. Because the evidence supporting Jenkins' possession of the cocaine, viewed in that light, does not amount to more than close proximity to the drugs and acquaintance with the residents of the apartment in which the drugs were found, we must reverse his conviction for possession with intent to distribute.

B.

Jenkins was also convicted for using a firearm in connection with a drug trafficking crime. Section 924(c)(1) of Title 18 provides, in relevant part, that any person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm" is subject to a mandatory 10-year sentence "in addition to" the punishment for the predicate offense. Jenkins argues that the district court erroneously denied his motion for a judgment of acquittal on this count because there was insufficient evidence to support the conviction of the predicate drug offense.

Commission of a drug trafficking offense is an element of the crime described in  924(c)(1), and must be proved beyond a reasonable doubt. See, e.g., United States v. Anderson, 59 F.3d 1323, 1326 (D.C. Cir.), cert. denied, 116 S. Ct. 542 (1995); United States v. Nelson, 27 F.3d 199, 201 (6th Cir. 1994). Because the government has not met its burden of proof on the predicate offense, Jenkins' conviction for using a firearm in connection with a drug offense must be also be reversed.

C.

Both counts of the indictment list aiding and abetting as theories of liability, and we must consider the possibility that the jury premised its verdict on these alternatives. To convict of aiding and abetting, the government must show that the defendant "in some [way] associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed." United States v. Bey, 736 F.2d 891, 895 (3d Cir. 1984) (quoting Nye & Nissen v. United States, 336 U.S. 613, 619 (1949)) (alterations in original).

Here, the government had to prove that another person committed the principal offense and that Jenkins aided and abetted in the commission of that offense. At trial, the government offered no evidence other than the evidence to support constructive possession by Jenkins. His close proximity to the

drugs and firearms, state of dress, and acquaintance with Stallings, who committed the principal offense, are not sufficient to prove aiding and abetting. The government simply has a "snapshot" of Jenkins sitting on a couch in an acquaintance's apartment next to a table laden with drugs and firearms. The evidence does not show that Jenkins associated himself with or participated in the drug distribution, or that he took any action to help it succeed. The "snapshot" does not show that he took any actions other than to enter the apartment, get partially undressed, and sit on the couch. Consequently, the jury could not have properly convicted Jenkins of aiding and abetting.

IV.

Because we have concluded that there was insufficient evidence for the jury to convict Sean Jenkins of possession of cocaine with intent to distribute, use of a firearm in connection with a drug offense, and aiding and abetting, we will reverse his convictions.

United States of America v. Sean Jenkins, Appellant
No. 95-1606

COWEN, Circuit Judge, dissenting.

Today the majority holds that, when the evidence is viewed in the light most favorable to the prosecution, no rational jury could possibly conclude that a man in his underwear sitting on a sofa that is surrounded by cocaine, assorted drug paraphernalia and firearms can be guilty of a possessory offense under the constructive possession doctrine. I believe that this record contains sufficient evidence for a rational jury to conclude that appellant Sean Jenkins constructively possessed cocaine with the intent to distribute it, in violation of 21 U.S.C. 841(a)(1), based upon what the police saw when they entered Sam Stallings' apartment in pursuit of an armed felon. Because the majority reaches a contrary result, I respectfully dissent.

I.

The facts of this case are not in dispute. In its June 6, 1995 order denying Jenkins' post-trial motion for a judgment of acquittal, the district court described the circumstances under which the police entered the apartment in question and what they saw when they arrived:

> Michael Kopecki, a Philadelphia police officer, testified that on February 10, 1994, at 1:30 a.m., he and his partner responded to a call that gunshots were being fired outside the West Walnut Lane Apartments. Kopecki testified that he parked his patrol car and moved toward the courtyard between two of the buildings, where he saw Larry Harrison with a gun and Kevin Jones with him. Kopecki yelled "police." Harrison and Jones ran toward the

building.  Kopecki followed Harrison into the building through a fire escape door and down a short hallway into apartment C-107.  When he entered the apartment, defendants Jenkins and Stallings were seated on the couch in the living room;  they were wearing boxer shorts and T-shirts.  On the coffee table in front of them were two triple-beam scales, two .38-caliber revolvers, three bags of white powder, small colored ziplock-style bags, clear plastic vials, and numerous red caps.  Defendants stipulated that the powder totaled 55.3 grams of cocaine and 42 grams of non-cocaine powder.  A Winchester 12-gauge shotgun with a sawed-off barrel was on the floor to the side of the couch.  All of the guns were loaded.

United States v. Jenkins, No. 94-385-02, slip op. at 1-2 (E.D. Pa. June 6, 1995).

## II.

"Constructive possession is a legal fiction created by courts to find possession where it does not exist in fact."  Michael S. Deal, Note, United States v. Walker:  Constructive Possession of Controlled Substances:  Pushing the Limits of Exclusive Control, 2 J. Pharmacy & L. 401, 401 (1994).  "The judicially created doctrine of constructive possession enables law enforcement officials to prosecute individuals in situations where the inference of possession is strong, yet actual possession at the time of arrest cannot be shown."  Mark I. Rabinowitz, Note, Criminal Law Constructive Possession:  Must the Commonwealth Still Prove Intent?--Commonwealth v. Mudrick, 60 Temple L.Q. 445, 449-50 (1987).  Our case law holds that a finding of guilt based upon constructive possession "requires both `dominion and control' over an object and knowledge of that object's existence."  United States v. Brown, 3 F.3d 673, 680 (3d Cir.) (quoting United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992)), cert. denied, 114 S. Ct. 615 (1993).  We have further held that the terms "dominion and control" are to be interpreted "as the ability to reduce an object to actual possession . . . ."  United States v. Martorano, 709 F.2d 863, 869 (3d Cir.), cert. denied, 464 U.S. 993, 104 S. Ct. 486 (1983). See Black's Law Dictionary 314 (6th ed. 1990) (Constructive possession "[e]xists when one does not have physical custody or possession, but is in a position to exercise dominion and control over a thing.");  see also George H. Singer, Note, Constructive Possession of Controlled Substances:  A North Dakota Look At a Nationwide Problem, 68 N.D. L. Rev. 981, 1002 (1992) (hereinafter Constructive Possession) (In those courts that have defined constructive possession "to include a right, a capacity, or an ability to reduce the substance to one's control[,] . . . an accused need not be presently exercising his or her right to control the contraband at the time of arrest;  it is enough that he or she could have done so.").

Our cases have held that "dominion and control" of narcotics "need not be exclusive but may be shared with others." United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972). A finding of dominion and control, however, may not be premised only upon "mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property . . . ." Brown, 3 F.3d at 680 (quoting Davis, 461 F.2d at 1036).

"Our standard of review in sufficiency of the evidence claims is deferential. . . . `[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Schoolcraft, 879 F.2d 64, 69-70 (3d Cir.) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)), cert. denied, 493 U.S. 995, 110 S. Ct. 546 (1989). This deferential test "places a very heavy burden on the appellant." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

### III.
#### A.

There is sufficient evidence in this record to affirm Jenkins' conviction on criminal possession charges under 21 U.S.C. 841(a)(1). The reasoning and analysis of the district court on the constructive possession issue were sound and should not have been disturbed on appeal. The district court rejected the same insufficiency argument, citing the following considerations:

> First, Jenkins was not merely in the same apartment where the cocaine and guns were found. Nor was he merely in the same room where the items happened to be hidden or stored. Rather, he was sitting immediately behind a coffee table piled with drugs, paraphernalia, and loaded weapons. . . . Second, while there was no evidence that Jenkins was a resident of the apartment, the jury could have reasonably inferred that he was not merely stopping by Stallings' apartment on February 10 and happened to find Stallings involved in drug activity. Jenkins, on a winter night at 1:30 a.m., was wearing boxer shorts and a T-shirt, which could imply that he was staying over in the apartment or had been there long enough to get comfortable. Moreover, the building manager testified that Jenkins was in and out of the apartment with Stallings and Harrison on different occasions. It would have been reasonable for a jury to conclude that defendant was a frequent visitor in the apartment and a participant in the activities inside. Third, there were two triple-beam balances on the coffee table and two people

> seated behind the table. From these facts
> the jury could have inferred that Jenkins and
> Stallings each was using a scale . . . .

Jenkins, No. 94-385-02, slip op. at 6-7. The district court
further held that there was

> sufficient evidence from which the jury could
> conclude that the drugs were possessed with
> the intent to distribute them. In addition
> to the cocaine on the table, there were two
> scales, a powdered cutting agent, plastic
> baggies, vials, and caps. An expert
> testified that these materials are used in
> preparing, weighing, and packaging drugs for
> street sale. . . . Even if the police did not
> happen to catch the defendants in the act of
> placing cocaine in baggies or vials . . . the
> tools of the distribution trade were in
> evidence and readily available. Thus I find
> that there was sufficient evidence to support
> the jury's finding that Jenkins possessed the
> cocaine with the intent to distribute it.

Id. at 7-8. While I agree with the district court's disposition
of the constructive possession issue, I will now elaborate upon a
number of additional points that provide further support for the
conclusion that there is sufficient evidence in the record to
affirm Jenkins' conviction.

1.

The question whether a defendant constructively
possessed narcotics requires a careful examination of the facts.
See Constructive Possession, supra, at 1008 ("The analysis under
the constructive possession doctrine is necessarily fact-driven.
As no one evidentiary factor standing alone is conclusively
demonstrative, it must be inferred from the totality of
circumstances of a particular case."). In this case, the
situation in which the police found Jenkins, by all appearances,
provided devastating indicia of his guilt. When the police
entered the apartment, they found Jenkins in the center of a drug
distribution enterprise. Jenkins had comfortably ensconced
himself within an arm's reach of firearms, narcotics, drug
paraphernalia and other tools of the narcotics trade. From this
vantage point, Jenkins had easy access to all the contraband that
surrounded him and appeared to have the complete trust of the
tenants of the apartment in which this unlawful enterprise was
carried on. Under these uncontested facts, and viewing this
evidence in the light most favorable to the prosecution, a
rational jury could have concluded that Jenkins had "the ability
to reduce [the cocaine] to actual possession . . . ." Martorano,
709 F.2d at 869.

2.

The majority's analysis seems to treat all forms of
proximity as having the same probative value and offers no

opinion as to whether Jenkins' position within grabbing range of all the contraband in the apartment is to be given any weight at all in our analysis.  Although I recognize that proximity, standing alone and without any other incriminating circumstances, is insufficient as a matter of law to convict a defendant on criminal possession charges, Brown, 3 F.3d at 680, this does not mean that the degree of proximity is irrelevant.  On the contrary, considered along with other attendant circumstances, proximity can support a judgment of conviction for criminal possession.

Close proximity to narcotics is an evidential, inculpatory factor that can support a finding of guilt on criminal possession charges to a greater or lesser degree.  See, e.g., Brown, 3 F.3d at 683 (distinguishing our decision in United States v. Davis, supra, where a constructive possession conviction was upheld on the ground that the defendant in Davis"was present with her co-defendant in the room and next to the table where the drugs and drug paraphernalia were found"); United States v. Evers, 448 F.2d 863, 866 (3d Cir. 1971), cert. denied, 405 U.S. 928, 92 S. Ct. 979 (1972).  In the instant case, the defendant voluntarily situated himself in a position where narcotics, firearms, drug packaging materials and various other tools of the drug-dealing trade were "within his immediate reach."  United States v. Bonham, 477 F.2d 1137, 1138 (3d Cir. 1973).  This is a significant and highly probative evidentiary fact.  See Parker v. United States, 601 A.2d 45, 51 n.18 (D.C. App. 1991) (rejecting a legal sufficiency challenge, the court observed that the case was "a diminished version of many constructive possession cases, in that the contraband was within the actual immediate reach of both defendants");  United States v. DiNovo, 523 F.2d 197, 201 (7th Cir.) (distinguishing our decision in United States v. Davis, supra, on the ground that defendant "was not discovered in the immediate area of unconcealed narcotics"), cert. denied, 423 U.S. 1016, 96 S. Ct. 449 (1975).  This factor is particularly telling in a case such as this where Jenkins comfortably settled himself in the center of a drug distribution network.

In concluding that Jenkins was "merely present" in the apartment, the majority stresses what it found to be the fortuity of Jenkins' presence in such a compromising position.  The majority goes on to conclude that "[w]hether or not [Jenkins] possessed the drugs, he could have been found sitting on the couch, standing next to it, in the bathroom, or in some other room in the apartment."  Majority Typescript at 12.  This statement is puzzling.  The possibility that Jenkins couldconceivably have been found in any one of these places had the police entered the apartment at a different time is irrelevant.  Indeed, if the police had shown up either earlier or later, Jenkins might not even have been in the apartment at all!  It is axiomatic that a criminal is not entitled to go free merely because the constable showed up at an inconvenient time.  This type of "bad luck" does not warrant granting Jenkins the windfall of a blanket acquittal.

3.

The majority further concludes that Jenkins' "acquaintance" with Stallings and Harrison cannot give rise to an inference of constructive possession. The majority is correct to the extent that mere association, standing alone, will not support a conviction premised upon the constructive possession doctrine. Brown, 3 F.3d at 680. This does not mean, however, that all types of associations with criminals are innocent and cannot support a finding of constructive possession. In the present case, Jenkins was, at a minimum, on excellent terms with narcotics traffickers who were openly plying their trade. This uncontested fact raises for our consideration a principle recognized by our sister circuits, which acknowledge that in this type of environment, "[t]he jury . . . could have reasonably determined that only trusted members of the operation would be permitted entry into the apartment, because allowing outsiders to have access to an apartment with large quantities of narcotics in plain view could compromise the security of the operation." United States v. Soto, 959 F.2d 1181, 1185 (2d Cir. 1992).

Similarly, the Court of Appeals for the D.C. Circuit has observed that "presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." United States v. Staten, 581 F.2d 878, 885 (D.C. Cir. 1978). The Staten court also made the common-sense pronouncement, equally applicable here, that the defendant's presence in an "apartment reeking with the tell-tale indicia of an ongoing drug-distributing enterprise could rationally have been viewed as a privilege reserved exclusively for participants." Id. In such a situation, "[i]t would seem that the voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation." Id. n.67 (emphasis added). See United States v. Harrison, 931 F.2d 65, 72 (D.C. Cir.) (noting that presence is "especially significant" in this context), cert. denied, 502 U.S. 953, 112 S. Ct. 408 (1991); see also State v. Brown, 404 A.2d 1111, 1114 (N.J. 1979) (rejecting argument that defendant was "merely present" as "[t]here were other evidential circumstances lending distinctive color to the character of defendant's presence at the scene.").

These inculpatory factors, considered together, provide a sufficient evidentiary foundation for a rational jury to conclude that Jenkins violated 21 U.S.C. 841(a)(1). I will now turn to my disagreement with the majority regarding the degree of deference our standard of review requires us to accord the jury's factual conclusions as to Jenkins' guilt.

B.

An analysis of the majority's opinion reveals that the court most certainly does not view the record evidence "in the light most favorable to the prosecution." Jackson, 443 U.S. at 319, 99 S. Ct. 2789. Quite to the contrary, the majority has elected not only to reject the inferences that the jury made as to what Jenkins was doing in the apartment, but has gone so far as to view the record evidence in the light most favorable to the

defendant.  This misapplication of the burden of proof undermines the majority's entire analysis of the insufficiency issue.

For example, the majority concludes that Jenkins' "prior acquaintance with Stallings answers why he was in the apartment . . . ."  Majority Typescript at 6-7.  Continuing along these lines, the majority opines that "we can only conclude that it was sheer happenstance that Jenkins was seated on the couch next to the cocaine when the police entered the apartment."  Id. at 11-12.  A rational jury, however, would be free to, and did, reject the majority's suggested inferences.  Indeed, the majority's second-guessing runs entirely counter to the burden that Jenkins must satisfy to prevail on his motion for acquittal.  It would appear that the majority has embarked upon an unauthorized exercise of post hoc appellate fact-finding to explain, to its own satisfaction at least, the "real" reasons for Jenkins' presence in the apartment.  In so doing, it has literally reversed the established rule as to which party has the burden of proof.  We are not in the business of overriding a jury's conclusions, based upon a highly selective interpretation of the facts viewed in a light most favorable to the defendant.

Similarly, the majority concludes that the presence of two scales in front of Jenkins does not link him to the drugs because they were not being used at the time of police entry and "it was more likely that the two scales belonged to and would be used by the two residents of the apartment."  Id. at 7.  As Jenkins did not actually live in the apartment, the majority appears to believe that the fact he was found seated directly in front of the type of scale commonly used to weigh narcotics (that was in the immediate vicinity of narcotics) need not concern us here.  The majority also appears to believe that since the police came upon two triple-beam scales, a rational jury could infer only that the drug activity that occurred in the apartment was carried on by two people who lived in the apartment.  Since Jenkins was a mere guest, so the argument goes, a rational jury could not conclude that he was one of the two participants involved in drug distribution, even though Jenkins was one of the two people in the room when the police entered the apartment.

The presence of two scales obviously does not lead to an a fortiori conclusion that only two people could have been involved in the narcotics distribution enterprise that was conducted out of Stallings' apartment.  It is not as though the police saw two tea cups and two bowls of porridge sitting on a table with two place settings.  A rational jury could conclude that the drug-dealing operation conducted out of Stallings' apartment was not a "two-man show."  As courts have recognized, a narcotics distribution scheme "necessarily involves multiple individuals."  Parker, 601 A.2d at 52.  Moreover, the two scales were not the only drug-related items in the apartment.  The apartment also contained three firearms and many items of drug-dealing paraphernalia, all within Jenkins' sight and reach.  Furthermore, the majority's narrow interpretation of the permissible inferences that a rational jury could draw from the presence of two triple-beam scales in the apartment on the table in front of Jenkins fails to evaluate the record evidence in the

light most favorable to the prosecution.

                                   C.

The majority contends that our decision in United States v. Brown, 3 F.3d at 673, is controlling and requires that we overturn Jenkins' criminal possession conviction. I disagree. Brown is clearly distinguishable from this case. Ama Baltimore, the defendant in Brown whose conviction was overturned on legal insufficiency grounds, was arrested as she was about to enter the front door of a house in which the police were executing a search warrant. Baltimore lived in the house. The police seized large amounts of narcotics in the house, but none in any areas of the house in which personal items belonging to Baltimore were found.

In the district court Baltimore was, like Jenkins, convicted of possession of a controlled substance with intent to distribute. We reversed. This result was premised upon the fact that Baltimore was nowhere near narcotics when she was arrested, the room in which Baltimore's possessions were found was drug-free and the attendant circumstances that surrounded her arrest did not adequately support a conclusion that she was an active participant in the criminal activities that occurred within the house.

Although the majority attempts to minimize the emphasis that the Brown court placed upon the potential significance of the proximity factor, see Majority Typescript at 8, its efforts are unpersuasive. In support of its decision to overturn the criminal possession charges against Baltimore, the Brown court relied, inter alia, upon the decision of the Court of Appeals for the D.C. Circuit in United States v. Zeigler, 994 F.2d 845 (D.C. Cir. 1993). The Brown court cited as an exculpatory factor in that case the fact that the defendant "was not found in the room where the crack cocaine was found . . . ." Brown, 3 F. 3d at 682. Moreover, the Brown court distinguished our decision in United States v. Davis, 461 F.2d at 1026, in which a finding of constructive possession was upheld, on the ground that "[t]he defendant in Davis was present with her co-defendant in the room and next to the table where the drugs and drug paraphernalia were found." Brown, 3 F.3d at 683.

In its analysis of whether there was sufficient evidence in the record to support Baltimore's conviction, the Brown court looked to where Baltimore was in relation to the contraband that the authorities had seized when she was arrested, and to the areas of the house where she arguably had a legitimate expectation of privacy. See id. ("neither [Baltimore] nor any of her possessions were found in any of the rooms where the drugs were seized"). Baltimore was nowhere near the drugs when she was arrested, nor were any of her personal possessions located in the house's drug-processing areas. The Brown case, therefore, lacked the present case's immediate proximity to the contraband, considered along with the other incriminating attendant circumstances that gave rise to a permissible inference that Jenkins committed the crime charged.

It is possible, of course, for a person to live in a house in which narcotics trafficking is taking place without being involved in the operation itself. Brown recognized this,

as did the Court of Appeals for the Ninth Circuit's decision in United States v. Vasquez-Chan, 978 F.2d 546 (9th Cir. 1992) (Reinhardt, J.), another case upon which the majority relies heavily. Although such living arrangements are foolish, they are not necessarily criminal. Brown recognized that people living in a house or apartment with multiple tenants may have their own separate spheres of activity and personal agendas.

The rationale that underlies Brown, however, does not help Jenkins. The record in this case can reasonably be interpreted to support the conclusion that Jenkins' personal connection with the area of the apartment that was the hub of a small-scale narcotics distribution enterprise was that of a trusted insider on familiar territory. Therefore, a rational jury could have concluded that Jenkins was a member in good standing of criminal narcotics distribution operation when the police entered Stallings' apartment on February 15, 1994.

                                    IV.

Our decision in United States v. Iafelice, 978 F.2d at 92, which discusses how a rational jury could analyze the circumstantial evidence presented in constructive possession cases, is also instructive here:

> It is not unusual that the government will not have direct evidence. Knowledge is often proven by circumstances. A case can be built against the defendant grain-by-grain until the scale finally tips; and considering all the facts and drawing upon rational inferences therefrom, a reasonablejury could find beyond a reasonable doubt that the defendant committed the crime for which he is charged.

Id. at 98 (emphasis added). Since the evidence presented here effectively tipped the evidentiary scale, we are precluded from nullifying the jury's fact finding.

Although "other inferences are possible from the evidence, . . . that circumstance does not justify us in rejecting the jury's verdict." United States v. Sandini, 888 F.2d 300, 311 (3d Cir. 1989), cert. denied, 494 U.S. 1089, 110 S. Ct. 1831 (1990). Accord Iafelice, 978 F.2d at 97 n.3 ("There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation."). The majority has interpreted the constructive possession doctrine far more restrictively than our case law warrants and has also failed to heed the Supreme Court's mandate to view the record evidence in the light most favorable to the prosecution. I would uphold Jenkins' conviction on criminal possession charges.