**UNITED STATES of America**

v.

**Nathaniel PITTS.**

**No. CRIM. A. 97–44–3.**

United States District Court,
E.D. Pennsylvania.

June 1, 1998.

Anita D. Eve, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Xavier P. Hayden, West Conshohocken, PA, for Nathaniel Pitts.

### *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

On November 1, 1996, Nathaniel Pitts ("Pitts") parked his car, a 1992 Mazda 929, at the intersection of Wayne Avenue and Washington Lane in Philadelphia. Harry French, Jr. ("French") came over to Pitts' car, got in the car, and then got out a few minutes later. FBI agents, who had French under surveillance for drug trafficking, arrested French. The agents asked Pitts to identify himself and establish proof of ownership of the Mazda. Pitts had no driver's license or proof of ownership of the car, so the agents detained him. The agents also seized the Mazda, pending establishment of ownership. An FBI agent, highly trained in observing "crime scenes," drove the Mazda to the FBI garage; he noticed nothing suspicious about the car or its contents during the drive from the Germantown area of Philadelphia to Sixth and Market Streets. On November 4, 1996, while the Mazda was still being held in the FBI's parking garage, the FBI conducted an inventory search of the car. During the search, a drug-detecting dog alerted agents to the scent of a controlled substance

in the trunk area of the car. FBI agents subsequently obtained a warrant to search the Mazda and located approximately 2 ounces of "crack" cocaine in the trunk of the car. In the course of the search, a loaded Lorcin .380 caliber semiautomatic pistol was found wedged under the carpeting on the driver's side of the car, near the steering column attachment.

On January 29, 1997, a federal grand jury indicted Nathaniel Pitts for conspiracy to distribute 50 or more grams of cocaine base, in violation of 21 U.S.C. § 846, and for carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On April 24, 1996, the same federal grand jury returned a superseding indictment charging Pitts with possession with intent to distribute 50 or more grams of cocaine base, in violation of 21 U.S.C. § 846, and using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In November 1997, following a jury trial, Pitts was convicted of count one, possession with intent to distribute 50 or more grams of cocaine base, and acquitted of count two, using or carrying a firearm during and in relation to a drug trafficking crime.

This case is now in the sentencing phase. Pitts, a first time federal offender, faces a base offense level of 32, which translates into a sentencing range of 121 to 151 months in prison. Pitts is also subject to a statutory mandatory minimum sentence of 10 years in prison. The Government has argued for a 2 level specific offense enhancement pursuant to USSG § 2D1.1(b)(1), raising Pitts' offense level to 34, and his sentencing range to 151 to 188 months, a net increase of at least 30 months. I will deny this enhancement, for the reasons that follow.

Section 2D1.1(b)(1) provides:

"If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

The jury acquitted Pitts of using or carrying a firearm at the time he committed the drug trafficking crime. A weapons enhancement under section 2D1.1(b)(1) may be applied at sentencing, however, after an acquittal for using or carrying a firearm during a drug trafficking crime. *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 638, 136 L.Ed.2d 554 (1997); *United States v. Goggins*, 99 F.3d 116, 119 (3d Cir.1996). I must decide whether an enhancement is proper in the factual context of this particular case, i.e., whether Pitts possessed a firearm while he committed the drug offense.

■ The government must first prove by a preponderance of the evidence that the defendant possessed a weapon. *See Watts*, 117 S.Ct. at 638. Possession of the weapon can be actual or constructive. A person who knowingly has direct physical control over an object, at a given time, is in actual possession of it. A person who knowingly has both the power and the intention, at a given time, to exercise dominion or control over an object is in constructive possession of it. *United States v. Jenkins*, 90 F.3d 814, 817–18 (3d Cir.1996).

If possession is proven, the sentencing judge then looks to the nexus between the weapon and the drug trafficking offense.[1] Application Note 3 to USSG § 2D1.1 stresses the importance of a nexus between the possession of the gun and the drug trafficking offense. It reads, in pertinent part:

"The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the en-

---

1. There are, of course, certain situations where the nexus between the gun and the drugs is so overwhelming that an inference of possession can be drawn from it. For example, in *United States v. Demes*, 941 F.2d 220 (3d Cir.1991), a police search of the defendant's house, at the time of his arrest for possession of cocaine with intent to distribute, uncovered "a Browning .32 caliber automatic weapon, a 20–gauge shotgun, a 12–gauge pump action shotgun, a Ruger mini 14 weapon, a .22 caliber rifle, a M–16 ... a Colt 9–mm weapon, an H & K pistol, and a BB gun" as well as ammunition. The district court inferred possession from the presence of an arsenal of such size and composition. 941 F.2d at 223. Based on all the evidence I heard throughout the trial, as well as my close review of the transcripts and exhibits, the facts of the instant case are very different from those in *Demes*, and do not allow such an inference of possession.

hancement would not be applied, if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." As the Note explains, the purpose of the enhancement is to penalize drug traffickers who possess guns as part of the offense conduct, because of the potential for violence. The Note deals with this nexus, between weapon and offense. One index of a sufficient nexus is presence, and the Note instructs that if a drug trafficker possesses a weapon, and the weapon is present, there is a sufficient nexus, and the adjustment should be applied, unless it is clearly improbable that the weapon is connected with the offense, that is, unless an inference based on possession and presence is deceptive.[2] Thus, the government must first prove the connection between the defendant and the gun, possession, and then prove a nexus between the gun and the drug trafficking offense.

 The instant case turns on the threshold issue of possession. There is no question of actual possession here, as Pitts did not own the gun, no one observed Pitts in possession of the gun, and his fingerprints were not found on the gun. The issue, therefore, is whether the government has proven by a preponderance of the evidence that Pitts constructively possessed the gun. The gun was found in close proximity to Pitts, wedged under the carpeting on the floor of the car, near the steering column attachment. Dominion and control over an object, however, are not established by mere proximity or presence. *Jenkins,* 90 F.3d at 817–18. "[T]here must be some action, some word, or some conduct that links the individual to the [contraband] and indicates that he had some

stake in [it], some power over [it]." *U.S. v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980). The government has failed to meet its burden: it has not presented sufficient evidence linking Pitts to the gun. The evidence at trial showed that Pitts regularly drove the Mazda, and had done so both on the day he was detained (and the car was seized) and the day before. At the time the Mazda was seized, Pitts was living with Sammie Scott and Doris Wallace. Trial testimony showed that Sammie Scott had equal access to the Mazda and borrowed it frequently, driving it on his own. Furthermore, there was testimony (albeit disputed) that Doris Wallace also had driven the Mazda. Therefore, the location of the gun, under the gas pedal of the Mazda, does not necessarily link the gun to Pitts.

There was no testimony at trial that linked Pitts to the gun, other than the fact that he lived in the same house with the owner of the gun. The gun belonged to Doris Wallace, whom Pitts was staying with. The gun was kept in Wallace and Scott's bedroom closet. Wallace and Scott testified that they never showed Pitts where the gun was kept. Neither Wallace nor Scott ever gave Pitts permission to use or move the gun. Neither Wallace nor Scott ever saw Pitts with the gun. Wallace and Scott had access to and control over the gun; there is no evidence that Pitts had any knowledge of the gun, let alone control over it.

The trial testimony did, however, show that when the FBI agents approached Pitts on November 1, 1996, the loaded gun was within Pitts' reach, for Pitts was sitting in

---

2. I misread the Note on the bench, as stated on the record at the sentencing hearing held on February 23, 1998; this memorandum supercedes, and corrects, my first impression of § 2D1.1(b)(1) and Application Note 3. I mistakenly interpreted it to mandate that the enhancement be applied *any time* a weapon is present at a drug offense, unless it is clearly improbable that the weapon was connected with the offense. However, after a closer reading, it is clear that the Note is concerned with the connection between the weapon and the drugs: it provides a second test, "clearly improbable," for situations in which a defendant has both drugs and weapon, but the weapon is not clearly connected to the drug trafficking offense. Just such a situation arose in *Goggins,* where the police, while

executing a search warrant, found the defendant lying on a bed next to a loaded gun in a bedroom in which there was also a substantial quantity of cocaine base. Goggins had a loaded gun next to him, directly visible and accessible to him, in a room with drugs; the facts led to a finding that possession and presence existed. The court then applied the *clearly improbable* test and found that it was not improbable that the weapon was connected with the drug offense. 99 F.3d at 116–17. Thus, the Application Note is only reached when the threshold requirement of possession has been proven, and the weapon is present. Because the government here has failed to prove that Pitts had control or dominion over the gun, I do not reach the clearly improbable test.

the driver's seat of the Mazda. Pitts could have reached the gun, which was wedged under the carpeting near the steering column, although he would have had to go to some effort to do so. The FBI agents who seized the car did not see Pitts leaning forward at any time, as though to get the gun, nor did Pitts make any furtive movements. The gun, furthermore, was not found in close proximity to the drugs, which were in the trunk of the car. Finally, the FBI agent who drove the Mazda from Germantown to Sixth and Market, a lengthy trip, did not detect the gun under the carpeting, despite his considerable training in just such detection. The FBI agents only saw the gun when they pulled back the carpet on the floor of the car.[3]

The government has produced no evidence, either at trial or at oral argument, that Pitts knew that the gun was in the car at the time of his arrest. All of the evidence of Pitts' relationship to the gun is based on inferences stemming from the gun's presence in the car: no one saw Pitts with the gun at any time; no one saw Pitts remove the gun from Wallace and Scott's house; Pitts' fingerprints were not found on the gun; the gun was not found near the drugs; and no action or statement by Pitts links Pitts to the gun or indicates that he had control over it. Conversely, there was testimony at trial that individuals other than Pitts owned the gun, had access to the gun, and had access to and use of the car in which the gun was found. Most persuasively, the evidence that a trained FBI Agent could drive the car a significant distance, with the gun under the gas pedal, and not notice the gun, shows that it was possible for Pitts to do the same. I do not know who placed the loaded gun under the carpeting of the Mazda. The government must prove more than mere proximity to the loaded gun; they must establish a nexus of dominion and control between Pitts and the gun. *See Jenkins,* 90 F.3d at 819–20.

After careful review of the evidence presented at trial and the arguments presented at the sentencing hearings, I find that the government has failed to prove by a preponderance of the evidence that Pitts "possessed" a firearm at the time of his drug trafficking offense within the meaning of § 2D1.1(b)(1); therefore, I deny the enhancement. The facts in this case simply do not support a two level enhancement pursuant to § 2D1.1(b)(1).

### ORDER

AND NOW, this 1st day of June, 1998, IT IS ORDERED that this case has been set for sentencing on Friday, June 19, 1998, at 9:30 a.m.

---

3. Government Exhibit 11 shows that the gun was almost completely concealed under the carpeting beneath the brake and gas pedals; it is very difficult to make out where the steering column ends and the gun begins. Testimony at trial was unclear as to whether FBI agents observed the gun at all before pulling back the carpeting on the floor of the car during the course of the inventory search.