

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-17-2006

# USA v. Cropper

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1467

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Cropper" (2006). *2006 Decisions.* Paper 1559.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1559

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1467
_____

UNITED STATES OF AMERICA

v.

EMMANUEL CROPPER,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00412-1)
District Judge:  Honorable Stewart Dalzell

_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed February 17, 2006)

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Defendant Emmanuel Cropper was convicted by a jury on two charges:  possession

of a firearm by a convicted felon and possession of ammunition by a convicted felon.

The District Court thereafter sentenced Cropper to a term of imprisonment of 72 months,

nine months above the advisory guidelines range. Cropper appeals his conviction and sentence, contending that the District Court committed two errors. First, Cropper challenges his conviction, arguing that the Government failed to submit sufficient evidence that Cropper constructively possessed the firearm and ammunition. Second, Cropper asserts that the sentence imposed by the District Court was unreasonable. We conclude that the District Court did not err in upholding the conviction or imposing the sentence, and we will affirm.

I.

Shortly after midnight on December 7, 2002, two Philadelphia police officers, armed with arrest and search warrants they would execute later that morning, arrived at Cropper's residence at 1301 North 27th Street to conduct surveillance. The officers observed a man entering the residence, approached him, and informed him that they were responding to a domestic disturbance call. The man told the officers that he was just returning from work, but that his brother was home. He then voluntarily took the officers inside to the third floor apartment, where the officers saw Cropper within the dark room. When the officers asked if there was any problem, Cropper said that there was not. In addition, a female voice from within the room later identified as Cropper's girlfriend told the officers that there was not a problem.

Approximately six hours later, the same two officers returned to the residence to execute the arrest and search warrants. Having been there several hours earlier, the

officers went directly to the bedroom on the third floor. The officers entered the bedroom, where they discovered Cropper and his girlfriend. After placing Cropper in handcuffs, the officers searched the bedroom. That search revealed a fully-loaded Ruger .45 caliber semi-automatic handgun located under the bed, as well as a box of Remington .45 caliber ammunition in plain view on the dresser. The officers also found two pieces of mail on the bedroom floor, both addressed to Cropper at 1301 North 27th Street.

At trial, the defense argued that Cropper was unaware of the gun's existence. Cropper's sister testified that his bedroom was on the second floor, and that Cropper's deceased cousin lived in the third floor bedroom. She further testified that the third floor bedroom functioned as a living room and that several people had stayed in that bedroom. Cropper's girlfriend also testified that the bedroom belonged to a deceased cousin. The Government, however, impeached that testimony with her previous testimony before the grand jury, in which she testified that Cropper's bedroom was on the third floor. Furthermore, in that previous testimony Cropper's girlfriend failed to mention that Cropper had a deceased cousin who lived on the third floor.

At the conclusion of the Government's case, Cropper moved for a judgment of acquittal on the ground that the Government failed to present sufficient evidence that Cropper constructively possessed the firearm and ammunition. The District Court denied the motion, finding that the Government had presented sufficient evidence of constructive possession.

3

The jury convicted Cropper of both charges.[1] Cropper brought a motion for the District Court to reconsider its prior ruling on the motion for judgment of acquittal, which the District Court denied.

The Probation Officer subsequently prepared a Presentence Investigation Report ("PSR"), which calculated that Cropper had an offense level of 22 and a criminal history category of III. The PSR also revealed that Cropper had three juvenile convictions for, *inter alia*, automobile theft, armed robbery, and firearms offenses.[2] In addition, at the time of his sentencing, Cropper faced various charges in state court resulting from an incident in which he allegedly shot an individual three times with a handgun and stole $75. It was that offense that led the Philadelphia Police to obtain and execute the arrest and search warrants that uncovered the firearm and ammunition in this case. Based upon an offense level of 22 and a criminal history category of III, the advisory guidelines range was 51 to 63 months.

At the sentencing hearing, the District Court noted that *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), was a "tectonic event" in the area of federal criminal sentencing. The District Court stated that the advisory guideline sentence was the "reference point" from which to examine Cropper's conduct. The District Court then

[1]The parties stipulated that Cropper had been convicted of "a crime punishable by imprisonment for a term exceeding one year," the predicate criminal offense pursuant to 18 U.S.C. § 922(g).

[2]Cropper's juvenile convictions were not counted in the PSR's criminal history calculation pursuant to United States Sentencing Guidelines § 4A1.2(d).

4

reviewed Cropper's extensive criminal history over a 16-year period of time, concluding that Cropper was "undeterrable." The District Court further stated that it was "disquieted by the lack of remorse" shown by Cropper at the sentencing hearing.[3] As a result, the District Court – citing the "powerful need to afford adequate deterrence to this particular defendant and protect the public from further crimes" – sentenced Cropper to a term of imprisonment of 72 months, nine months above the advisory guidelines range.[4]

## II.

Defendant appealed both his conviction and the sentence imposed by the District Court. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review the sufficiency of the evidence to support Cropper's conviction in the light most favorable to the verdict winner, the Government. We are required to sustain the conviction "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quoting *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (quotation marks and citation omitted)). We may overturn the conviction "[o]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find

---

[3]Cropper informed the District Court at the sentencing hearing that he "didn't deserve to be here" and that he "didn't do anything to get here." Cropper portrayed himself as a scapegoat and told the District Court that he was convicted because "somebody had to accept the responsibility."

[4]The District Court also sentenced Cropper to three years of supervised release, a $1,000 fine, and a $200 special assessment at counts one and two.

guilt beyond a reasonable doubt[.]" *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997) (quoting *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) (quotation marks omitted)).

We review Cropper's sentence of imprisonment to determine whether that sentence was "unreasonable," employing as our guide the factors set forth under 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. at - -, 125 S. Ct. at 765-66.

III.

A.

Because Cropper was not in actual possession of the firearm and ammunition when he was arrested, the Government was required to prove beyond a reasonable doubt that Cropper constructively possessed the items. In order to establish constructive possession, the Government must establish that Cropper was aware of the existence of the items and that he exercised dominion and control over them. *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992). Mere proximity to an illegal item, or mere presence on the property where the item is located, is not determinative with respect to whether a defendant has exercised dominion and control. *See United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996) (reversing the defendant's conviction for possession with the intent to distribute cocaine where the sole evidence presented against the defendant was that he was found in close proximity to bags of cocaine discovered at house of an acquaintance). In addition, although an ownership interest in property is a "significant factor" in the analysis, an

6

ownership interest alone is insufficient to establish dominion and control. *United States v. Brown*, 3 F.3d 673, 682 (3d Cir. 1993); *see also Iafelice*, 978 F.2d at 97. Rather, "[s]ome additional evidence of dominion and control is required before a finding of constructive possession can be made beyond a reasonable doubt." *Jenkins*, 90 F.3d at 820.

In this case, there are three key pieces of evidence that establish that Cropper exercised dominion and control over the ammunition and firearm. First, not only were the firearm and ammunition found within Cropper's house, they were found inside Cropper's bedroom. Although Cropper introduced evidence at trial that the bedroom belonged to a deceased cousin, the jury was free to reject that evidence when faced with contradictory evidence and conclude that Cropper was the sole occupant of the bedroom.[5] As we have previously stated: "Where a person is the sole occupant of a room and has the right to exclude all others from it, it may logically be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence." *United States v. Bonham*, 477 F.2d 1137, 1138 (3d Cir. 1973); *see also Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir. 1997).

---

[5]Specifically, the Government introduced the following evidence: (1) Cropper's girlfriend had previously testified before the Grand Jury that Cropper's bedroom was the third floor bedroom; (2) two pieces of mail addressed to Cropper were found on the floor of the bedroom; (3) the second floor room, which Cropper asserted was his bedroom, did not contain a bed or anything else to sleep on; and (4) the police had observed Cropper, along with his girlfriend, in the third floor bedroom six hours earlier.

7

Second, the police found the ammunition in plain view on top of a dresser inside the bedroom. The fact that the ammunition was left in the bedroom on top of the dresser creates an inference that Cropper was aware of its existence and exercised constructive possession over it. *See United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir. 1972) (stating that the presence of heroin and heroin paraphernalia in plain view on a kitchen table and nearby floor was sufficient to warrant an inference that the defendants were exercising dominion and control over the drugs).

Finally, there is a relationship between the ammunition found in plain view and the firearm discovered under the mattress. In *Bonham*, we determined that the existence of marijuana and phenaphen in plain view in the co-defendant's bedroom he shared with his brother was insufficient to establish that he was aware of the existence of *heroin* concealed in hidden recess above doorframe. *Bonham*, 477 F.2d at 1138. The reason was that the presence of the narcotics on the bedroom table bore no relationship to the heroin ultimately uncovered. In contrast, the ammunition found in this case was of the same type as the ammunition loaded in the firearm. The relationship between the two items in this case, particularly considering that the firearm was *loaded* with identical ammunition, is much stronger than in *Bonham* and raises an inference that Cropper was aware of both the ammunition found in plain view and the firearm.[6]

_____

[6]Although we conclude that the relationship between the ammunition and the firearm is sufficient to establish the inference that Cropper possessed the firearm, we note that the relationship between the two items would have been even stronger had the

8

Viewing all of this evidence *in toto*, we conclude that the Government produced

sufficient evidence that Cropper had constructive possession over the ammunition and the

firearm. For these reasons, we will affirm the District Court's decision denying

Cropper's motion for judgment of acquittal.

B.

Cropper also asserts that the sentence imposed by the District Court, which was

nine months above the advisory guidelines level range, was unreasonable as a matter of

law. We disagree.

Following the United States Supreme Court's decision in *United States v. Booker*,

543 U.S. 220, - -, 125 S. Ct. 738, 765-66 (2005), we apply a reasonableness standard of

review to criminal sentences. Although significant in the ultimate inquiry, a sentence that

is greater than the advisory guideline range is not *per se* unreasonable. *See United States

v. Jordan*, - - F.3d - -, 2006 WL 73406 (7th Cir. Jan. 13, 2006) (upholding sentence that

was 103 months greater than applicable advisory guidelines as reasonable). In order to

determine whether a particular sentence is unreasonable, we examine the sentence

through the prism of the sentencing factors set forth under 18 U.S.C. § 3553(a).

In this case, the transcript from the sentencing hearing reveals that the District

Court carefully considered the factors set forth under § 3553(a). As one factor, the

---

Government introduced evidence that the bullets in the chamber of the firearm had came
from the box of ammunition found on top of the dresser.

District Court stated that the advisory guidelines range was 51 to 63 months. *Id.*

§ 3553(a)(4). Based upon the defendant's extensive criminal history, *id.* § 3553(a)(1), the

fact that he had not worked at a lawful occupation between 1998 and 2004, *id.*, and his

statement to the court denying responsibility for the crime and failing to demonstrate any

remorse, *id.* § 3553(a)(2), the District Court concluded that Cropper was "undeterrable"

and that a lengthier sentence was required to deter future recidivism. *Id.*

§ 3553(a)(2)(A)-(C).

While we do not need to explicate the exact contours of the reasonableness inquiry

in this opinion, we conclude that the District Court did not err in imposing Cropper's

sentence. The District Court carefully examined each of the factors set forth under

§ 3553(a), ultimately determining that Cropper's lengthy criminal history and his lack of

remorse required a sentence above the advisory guidelines range to guard against

Cropper's credible threat of recidivism and accompanying harm to the public. The

District Court's explanation of the sentence imposed demonstrated a careful consideration

of the § 3553(a) sentencing factors. Furthermore, the District Court's conclusion that the

factors set forth under § 3553(a)(1) and (2) compelled a nine-month increase above the

advisory guidelines range was supported by Cropper's extensive criminal history and his

statement to the court at sentencing demonstrating a total lack of remorse for his crime.[7]

---

[7]In addition, we find no merit in Cropper's argument that the District Court should
have considered what Cropper's sentence would have been had he been convicted of a
similar state-law offense. *Booker* directs our reasonableness review to the factors set

As a result, we conclude that Cropper did not meet his burden of demonstrating that his sentence was unreasonable because the District Court reasonably applied the § 3553(a) factors to the particular circumstances of Cropper's case. *See United States v. Cooper*, No. 05-1447, 2006 WL 330324, at *4-5 (3d Cir. Feb. 15, 2006).

IV.

For the reasons set forth above, we conclude that there was sufficient evidence to uphold Cropper's conviction, and that the sentence imposed by the District Court was reasonable. Accordingly, we will affirm the District Court.

---

forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law. *See United States v. Snyder*, 136 F.3d 65, 68-70 (1st Cir. 1998) (stating that identical phrase regarding the need to avoid "unwarranted sentencing disparities" in the sentencing guidelines reflects a "concern with variations among federal courts across the nation, without reference to their state counterparts," and that the "guidelines seek to perform uniform sentencing among federal courts in respect to federal crimes").