J.A21004/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALEX BANKS, | : | |
| | : | |
| Appellant | : | No. 1852 EDA 2013 |

Appeal from the Judgment of Sentence June 7, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0000449-2012

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED AUGUST 28, 2015**

Appellant, Alex Banks,[1] appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas after he was found guilty of drug and firearms-related offenses.  He claims: (1) the trial court erred in denying his suppression motion; (2) the evidence was insufficient to sustain his convictions; (3) the court's verdicts were against the weight of the evidence; and (4) the imposition of a mandatory minimum sentence under 42 Pa.C.S. § 9712.1[2] is illegal under ***Alleyne v. United***

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant's co-defendant's appeal is docketed at 1937 EDA 2013.

[2] Section 9712.1 provided, *inter alia*, that "[a]ny person who is convicted of [PWID] when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible .

*States*, 133 S. Ct. 2151 (2013). We affirm the convictions, but vacate the judgment of sentence, and remand this matter for resentencing.

The trial court summarized the procedural history and the Commonwealth's evidence giving rise to this appeal:

> [Appellant] and his co-defendant, Kaaleem Williams ["co-defendant], were arrested on December 6, 2011 and charged with a variety of drug and weapons offenses[, including possession of a controlled substance with intent to deliver[3] ("PWID"), conspiracy,[4] and possessing a firearm with manufacturer number altered.[5] Their] Joint Motion to Suppress any and all physical evidence recovered was heard and denied by the Honorable Charles J. Cunningham, III . . . . On January 25, 2013, following a [joint] waiver trial before [the Honorable Lisette Shirdan-Harris], [Appellant] was found guilty on all charges.[[6] Appellant] made an oral motion, and filed a subsequent written post-trial Motion for Extraordinary Relief ("MFER") seeking to have the verdict vacated.
>
> At [Appellant's] June 7, 2013 sentencing, th[e trial c]ourt denied the MFER and imposed the mandatory minimum sentence of five to ten years on the . . . [the PWID] charge (with which the . . . Conspiracy . . . charge merged); a concurrent sentence of one to two years for the . . . Possessing a Firearm with Manufacturer Number Altered charge; and no further penalty on all remaining charges[ ].

. . . or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement."

[3] 35 P.S. § 780-113(a)(30).

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 6110.2.

[6] Neither Appellant nor the co-defendant testified at trial.

\*    \*    \*

At both [the suppression] Motion hearing and the January 25, 2013 Waiver Trial . . ., the Commonwealth presented the testimony of Philadelphia Police Investigator Daniel Thompson and Detective Timothy Connell and the following facts were established. [A]round 3:00 A.M. on December 6, 2011 five Philadelphia warrant officers arrived at 1716 North 55th Street in Philadelphia, Pennsylvania, to execute an arrest warrant for a resident of that address named Shaquita Brown. Three Officers were present, knocking on the front door while the remaining two Officers covered the rear of the property. Before entering the residence and during the subsequent search, Officers were under the belief that this property was a single family home. The Officer[s] testified that it was a regular twin house with a single front door with one doorbell and one lock. There was no intercom system, no sign of multiple mailboxes or apartment numbers or exterior locks on each door.

After a few minutes of knocking, one of the tenants answered the door; the Officers identified themselves and explained that they had a warrant for Shaquita Brown. This tenant was shown a picture, stated that he did not know her, admitted the officers into the entryway of the first floor and subsequently into his room to search for Ms. Brown. The Officers' search of the room yielded no results and the tenant suggested that the Officers check the other rooms of the residence. The Officers proceeded to knock on the remaining doors in the hallway, following the same procedure of identifying themselves, stating that they were looking for resident Shaquita Brown, being admitted and searching the room. It took a few minutes of knocking on each door before they were answered and the inhabitants of each room appeared to have been sleeping with the lights turned off. The search of these rooms also yielded no results.

About twenty minutes after initially entering the building, the Officers reached the fourth and final door. Again, the Officers knocked on the door, which they described as a regular wooden bedroom door, and it took

two to three minutes before co-defendant, Kaaleem Williams, responded asking "Who's there?" The Officers identified themselves, the co-defendant opened the door, [and] was shown a picture of Shaquita Brown and a copy of the arrest warrant. The Officers asked if they could enter the room to search for Ms. Brown and the co-defendant said "okay", agreeing to let them enter. . . .

Upon entering the room to begin their search, the Officers immediately noticed [Appellant] sitting on the bed. Both [Appellant] and co-defendant were fully clothed and wearing shoes. The room was described as similar to the others in the home—a regular style bedroom with an open doorway (but no door) leading into the bathroom. The room was small and contained only a twin sized futon bed; small refrigerator; broken dresser; and television. The lights were on, in addition to the television with the movie "Juice" playing.

As the Officers began their search for Ms. Brown in the room, Officer Jones approached [Appellant] who was seated on the bed to show him a picture of Ms. Brown for identification. Upon approaching [Appellant], the Officer looked to his left and saw what he believed to be narcotics in plain view in the broken dresser drawer that was completely missing its front panel. Officer Jones alerted the other Officers that there was something in the drawer—a "white-chunky substance" in plastic bags being held inside of a bigger clear plastic bag—that he believed to be crack cocaine. Upon further investigation of the drawer, the Officers were also able to view the handle of a handgun which prompted them to secure [Appellant] and [the] co-defendant as a cautionary measure to ensure the Officers' safety.

The Officers alerted their Sergeant to the discovery and were given orders to secure the scene and continue their search for Ms. Brown. While searching for her under the bed, the Officers discovered an additional firearm which they described as a "small submachine gun" with a bit longer barrel and a bigger clip. At the foot of the bed near the front door, a third handgun was recovered. The subsequent search of the bathroom also led to the

discovery of "a big black trashbag" that was "full of marijuana."

Ms. Brown was not found in the room, so the Officers were ordered by their Sergeant to secure the contraband that they discovered by placing it in evidence bags and leaving them in the room while they transported [Appellant] and [the] co-defendant to the Southwest Detectives headquarters. [Appellant and the co-defendant each] provided different home addresses, neither of which was that residence. Officers secured the front and rear of the residence when they arrived and no one was seen exiting at any point. Based on the contraband discovered during the search for Ms. Brown, additional Officers obtained and executed a search warrant in order to recover the items.

At trial, the same facts were found and all parties stipulated to the following: the seizure analysis establishing that 28.08 grams of crack cocaine were discovered in addition to 2.12 pounds of what tested positive as marijuana from the trash bags; that whoever possessed the drugs possessed them with the intent to deliver based on the amount, paraphernalia, scale and value — approximately $1,000 in crack cocaine and $3,000 in marijuana; the ballistics report establishing that two of the three firearms were operable at the time of recovery, while the third became operable after recovery and insertion of a new magazine; and that the serial number of the semi-automatic weapon was defaced by abrasion, gauging and restored by chemical etching. . . .

Trial Ct. Op., 7/14/14, at 1-7 (record citations omitted). This appeal followed.[7]

Appellant's presents the following questions for review, which we have reordered as follows:

---

[7] Appellant timely complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement.

Did the Suppression Court at the suppression hearing err when it failed to suppress evidence illegally seized from an unlawful entry and search of the place where [Appellant] was located at the time of his arrest?

Did the Trial Court err when it relied upon evidence that was insufficient as a matter of law for conviction on all charges, insofar as the Commonwealth failed to prove that [Appellant] actually or constructively possessed the narcotics, paraphernalia, or firearms at issue, or conspired to do so?

Did the Trial Court err when it failed to grant [Appellant's] Motion for a Directed Verdict at the close of the Commonwealth's [case], as well as [Appellant's] Motion for Judgment of Acquittal at the close of [Appellant's] case?

Did the Trial Court err when it failed to grant [Appellant's] Motion for Extraordinary Relief prior to sentencing?

Did the Trial Court err when its verdict was founded upon facts contrary to the weight of the evidence and in using those facts to convict [Appellant]?

Did the Trial Court err when it failed to enumerate aggravating factors on the record and sentenced [Appellant] pursuant to 42 Pa.C.S. § 9712.1 to a mandatory term of confinement contrary to the recent holding of the Supreme Court of the United States in **Alleyne** . . . ultimately giving [Appellant] an unconstitutional and illegal sentence?

Appellant's Brief at 8-9.

Preliminarily, we consider whether Appellant preserved his intended issues for review. *See* Trial Ct. Op. at 2-3 (suggesting waiver based on Appellant's "lengthy, confusing, [and] redundant" Pa.R.A.P. 1925(b) statement); Commonwealth's Brief at 20 (noting Appellant failed to preserve weight-of-evidence claim before trial court). First, we do not agree with the

- 6 -

trial court's suggestion that Appellant's prolix Rule 1925(b) statement required waiver. **See** Trial Ct. Op. at 2-3. Although Appellant's statement unnecessarily spanned three pages, included argument, and was poorly organized, those defects did not preclude the trial court from discerning the issues, nor did it preclude meaningful appellate review. **See** Appellant's Concise Statement of Errors Complained of on Appeal, 7/12/13, at 1-3; Trial Ct. Op. at 3. Therefore, we decline to find all issues waived based on the form of Appellant's Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii).

Second, we are constrained to agree with the Commonwealth that Appellant did not challenge the weight of the evidence in the trial court, and his intended argument in that regard has been waived.[8] **See** Pa.R.Crim.P. 607(A)(1)-(3); **Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009) (noting defendant's failure to preserve weight of evidence claim in trial court was not cured by raising issue in Pa.R.A.P. 1925(b) statement, even though trial court addressed issue in its Pa.R.A.P. 1925(a) statement); Appellant's Brief at 8-9, 36-37.

Third, we note Appellant's sufficiency argument in his Rule 1925(b) statement focused on the constructive possession of the drugs and firearms,

---

[8] Although Appellant filed and argued a motion for extraordinary relief before sentencing, that motion focused upon the sufficiency of the evidence and did not seek a new trial. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (summarizing differences between sufficiency and weight of evidence claims).

but did not fairly include a challenge to an element for conspiracy.[9]

Accordingly, Appellant's argument that the evidence was insufficient to

_____

[9] Specifically, Appellant framed this error complained of on appeal as follows:

> Second, the Trial Court erred when it ignored U.S. Supreme Court, lower level federal court and Pennsylvania case law when applying the evidence which was before the Court for convicting [Appellant]. Specifically, the evidence was "insufficient as a matter of law" to convict [him. Appellant] was "merely present" at the location where the drugs and guns were found and had no ties to the residence and at no time exhibited any conduct or behavior to indicate dominion or control over the items found. In fact, [Appellant] was merely sitting on a bed and was in front of a television when Agents came into the property. There were no "controlled drug buys", no indicia of ownership of the firearms which were confiscated and no furtive movements on the part of [Appellant] to show any connection to the contraband. Additionally, the evidence showed that the drugs and guns were secreted in places that were not readily available to [Appellant]. Drugs were in a chest of drawers along with a gun; other guns were hidden under the bed. No inference could even be reasonably drawn to conclude that [Appellant] knew the items were there. He was just a visitor in the residence and was in the wrong place at the wrong time. That alone does not prove "guilt beyond a reasonable doubt."

Appellant's Concise Statement of Errors Complained of on Appeal at 2.

We also note Appellant claimed he moved for a "directed verdict" at the close of the Commonwealth's case and "a judgment of acquittal" after the announcement of the verdict. *See* Appellant's Concise Statement of Errors Complained of on Appeal at 2-3; Appellant's Brief at 4. However, no reference to motions for "directed verdicts" or "motions for judgment of acquittal," whether oral or written, appear in the record. *See* N.T., 1/25/13, at 112, 115. In any event, we would review the trial court's denial of motions for "judgments of acquittal" at trial under the same standard as the sufficiency of the evidence. *See Commonwealth v. Potts*, 460 A.2d

sustain his conspiracy conviction has been waived. *See* Pa.R.A.P.
1925(b)(4)(vii); Appellant's Brief at 35-36.

In sum, we address the following claims preserved in this appeal: (1)
the trial court erred in denying his motion to suppress; (2) the evidence was
insufficient to convict him of the possessory offenses; and (3) the sentence
imposed under 42 Pa.C.S. § 9712.1 was illegal. We address these
arguments *seriatim*.

Appellant first claims he was entitled to suppression of evidence
because officers entered the fourth apartment in the building under false
pretenses. He suggests the officers knocked on the door and informed his
co-defendant they had a "search warrant," rather than an arrest warrant for
a third party. Appellant's Brief at 19-20. He thus claims the officers used
deceit to gain entry into the apartment and neither he nor his co-defendant
validly consented to the officer's presence. *See id.* at 22, 26. No relief is
due.

Our standards of review are well settled:

> When reviewing the denial of a motion to suppress, we
> must first ascertain whether the record supports the
> court's factual findings. In considering those factual
> findings, we must consider only the evidence of the

---

1127, 1138 & n.7 (Pa. Super. 1983). Furthermore, the presentation of such
motions was unnecessary to preserve an appellate challenge to the
sufficiency of the evidence. *See* Pa.R.Crim.P. 606(A)(1), (2), (7).
Accordingly, we conclude Appellant's challenge to the sufficiency of the
evidence regarding constructive possession of the contraband is not waived.

> prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error.

*Commonwealth v. Muniz*, 5 A.3d 345, 349 (Pa. Super. 2010) (citations omitted).

Our review of the record reveals the following. Investigator Thompson initially testified at a preliminary hearing that he and his partner knocked on the door to the subject apartment, identified themselves as the Philadelphia Warrant Unit and stated, "We have a **search warrant**." N.T., 1/11/12, at 6 (emphasis added).

At the suppression hearing, Investigator Thompson testified on direct examination that his partner knocked on the door to the apartment and stated, "Philadelphia Warrant Unit, we have a warrant." N.T., 5/14/12, at 17. The co-defendant opened the door and, according to the officer's testimony, his partner told the co-defendant they had "search warrant." *Id*. His partner then showed him a picture of Ms. Brown. *Id.* Appellant's counsel cross-examined the officer to emphasize the officer used of the term "search warrant" in both his preliminary hearing and suppression hearing testimony. *Id.* at 35.

After brief testimony from a police detective,[10] the Commonwealth rested. Counsel for the co-defendant argued the officers told the co-defendant they were executing a search warrant. As a result, the trial court reopened the evidence and recalled Investigator Thompson, over the co-defendant's objection. *Id.* at 55-56. The court directly examined the officer and the following exchange occurred:

> THE COURT: At the preliminary hearing, you said that [the co-defendant] opened the door and you showed him a picture of Shakeeta Brown and said that you are looking for her is; is that right?
>
> [Investigator Thompson]: Yes.
>
> THE COURT: Did you tell him you had an arrest warrant for her? What did you tell him you had?
>
> THE WITNESS: I told him we had a warrant for her, Your Honor.
>
> THE COURT: It was a warrant to search for her?
>
> THE WITNESS: It's a body warrant. It's a warrant to search for her.
>
> THE COURT: So when you're having this discussion with [the co-defendant], you describe as what you have in your hand as a search warrant?
>
> THE WITNESS: I believe at the time I said it was just a warrant for her, Your Honor. I don't recall saying "search warrant," because we don't deal with that.

*Id.* at 56.

---

[10] Investigator Thompson's partner did not testify at the preliminary hearing, suppression hearing, or trial.

- 11 -

Counsel for the co-defendant again cross-examined the officer and emphasized the officer's use of the term "search warrant" at the preliminary hearing and earlier at the suppression hearing. *Id.* at 57. The officer explained, "I did say that I might have slipped up." *Id.* The Commonwealth conceded that the officer stated "search warrant" at the preliminary hearing and the suppression hearing, but on redirect examination, attempted to rehabilitate his testimony by referring him to other points in the transcript where the officer stated "bench warrant" or "body warrant." *Id.* at 58, 60-61.

The record thus reveals obvious contradictions in the officer's testimony. Nevertheless, the trial court was entitled to resolve the conflicts in the testimony and find credible the officer's explanations he only inadvertently used that term in his prior testimony and at the time of the entry into the apartment. Moreover, the court could find that neither the officer nor his partner informed the co-defendant they had a "search warrant." As an appellate court, we are bound to defer to the trial court's credibility and factual determinations that are supported by the record. *See Muniz*, 5 A.3d at 349. As there is some support for the trial court's findings of fact and credibility, we affirm on that basis. Further, because Appellant's factual challenge to the trial court's suppression ruling fails, we do not consider his further legal argument the officers improperly obtained consent to enter the apartment.

Appellant next claims the evidence was insufficient to sustain the verdicts based on constructive possession of the drugs and the firearms. Appellant's Brief at 31. He relies on our decision in **Commonwealth v. Rodriguez**, 618 A.2d 1007 (Pa. Super. 1993), and a federal decision, **United States v. Jenkins**, 90 F.3d 814 (3d Cir. 1996).[11] **Id.** at 32-33. According to Appellant, "[t]he only evidence used to convict [him] was his merely being present in the apartment in which the contraband was hidden." **Id.** at 31. He continues, "There [were] ZERO facts which would indicate [he] had any possessory interest in the apartment or its contents and nothing to show that he was anything other than an ill-timed visitor who was caught up in a police raid." **Id.** at 33. We are constrained to disagree.

Our review is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime

---

[11] "While . . . federal court decisions are not binding on this [C]ourt, we are able to adopt their analysis as it appeals to our reason." **Commonwealth v. Arthur**, 62 A.3d 424, 429 n.9 (Pa. Super. 2013) (citation omitted).

- 13 -

> beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. . . .

*Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. 2005) (citation omitted).

> Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. Constructive possession may be established by the totality of the circumstances. . . .

*Id.* (citations omitted). However, "'[g]uilt by association is unacceptable.' Further, 'mere presence of one person, among a group at a scene of contraband, is not a strong factor indicative of guilt.'" *Commonwealth v. Thompson*, 779 A.2d 1195, 1199 (Pa. Super. 2001) (citations omitted).

We note that in both *Rodriguez* and *Jenkins*, the evidence established that other parties were responsible for the residence searched or the contraband found therein. In *Rodriguez*, officers executed a search warrant on an apartment and arrested Joseph Aquino. *See Rodriguez*, 618 A.2d at 1008. Aquino was identified as the perpetrator in a drug sale that gave rise to the search warrant, was in physical possession of contraband and cash, and had mail in his name in the apartment. *Id.* Officers recovered additional contraband in the apartment. *Id.* Officers also found the defendant hiding in a closet, next to a jacket with three baggies of cocaine inside a cigarette pack in the side pocket. *Id.* The defendant was arrested following a struggle. *Id.* The defendant had no contraband on his

person and had no personal items in the apartment. However, he was in physical possession of a key to the apartment. *Id.* Following his conviction, this Court concluded the defendant's possession of the key and presence in Aquino's apartment were insufficient to prove constructive possession of the contraband. *Id.* at 1009. We emphasized there was no indication he resided at the apartment, engaged in criminal activity, or was aware of the presence of contraband. *Id.*

In *Jenkins*, officers pursued two suspects into an apartment. *Jenkins*, 90 F.3d at 816. There, they found the defendant and another individual, Sam Stallings, seated on a couch, in their underwear, with three bags of cocaine, firearms, and paraphernalia for packaging the cocaine on the coffee table in front of them. *Id.* Stallings and one of the suspects who initially led officer to the apartment were identified as residents of the apartment. *Id.* at 817. The *Jenkins* Court reversed the defendant's conviction, concluding there was no "decisive nexus" between the defendant and the contraband beyond the evidence of his proximity to the contraband and his presence in Stallings apartment. *Id.* at 820.

Thus, *Rodriguez* and *Jenkins* emphasized the absence of a sufficient nexus establishing control over the contraband vis-à-vis a party implicated in the criminal activity. *See Rodriguez*, 618 A.2d at 1009; *see also Jenkins*, 90 F.3d at 820. Although it is well settled that "mere presence" is

insufficient to establish constructive possession under those circumstances, this Court has also opined that a fact-finder

> need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being processed and packaged is a material and probative factor which the jury may consider. Drug dealers of any size and [illegal drug] manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation.

> ***United States v. Robinson***, 978 F.2d 1554, 1557–1558 (10th Cir. 1992) (internal quotations and citations omitted); ***see also Rivas v. United States***, 783 A.2d 125, 138 (D.C. 2001) (*en banc*) ("a claim of innocent presence becomes decidedly less plausible in an environment (vehicular or otherwise) that is rife with evidence of ongoing drug production or distribution, such as a manufacturing or cutting facility, a warehouse, or a staging or preparation area where a large quantity of drugs or drug paraphernalia is exposed to view"); ***United States v. Batista–Polanco***, 927 F.2d 14, 18 (1st Cir. 1991) (casting doubt upon the "hypothesis that participants in a [large-scale heroin packaging] scheme would permit a noncontributing interloper to remain for an extended period of time in a small apartment while their conspicuous criminal conduct continued unabated [since s]uch is not normally the conduct that one would expect of conspirators engaged in conduct which by its nature is kept secret from outsiders") (internal quotations, citations, and corrections omitted); ***United States v. Staten***, 581 F.2d 878, 885 n. 67 (D.C. Cir. 1978) ("[i]t would seem that the voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation").

***Commonwealth v. Vargas***, 108 A.3d 858, 869 (Pa. Super. 2014) (*en banc*).

Instantly, the record, when viewed in a light most favorable to the Commonwealth, provided a reasonable basis for the trial court's finding that the "small room" in which Appellant and the co-defendant were found "was most likely used exclusively for packaging drugs." **See** Trial Ct. Op. at 12. We cannot disregard (1) the presence of $4,000 worth of narcotics— including the "giant garbage bag" containing marijuana and vials located near the shower, (2) the presence of multiple firearms—one of which had its serial number obliterated, or (3) the absence of any paraphernalia for personal use. **See Vargas**, 108 A.3d at 869-70. The combination of these factors all strengthened the inference that the apartment was a location for securing narcotics that were packaged for future sales. **See id.**

Moreover, the evidence did not give rise to a suggestion of innocent presence in the room. **See Rodriguez**, 618 A.2d at 1009; **Jenkins**, 90 F.3d at 820. The only furnishings were a futon-style bed, a small refrigerator, a dresser, and a television. N.T., 1/25/13, at 30, 37-38. The dresser only contained "a T-shirt or two," and there was no evidence of mail addressed to any individual. **Id.** at 52-53. Both Appellant and the co-defendant provided police officers information that they did not live in the building. Neither Appellant nor the co-defendant had a relationship to the apartment or a legitimate occupant of the building, despite their presence in the apartment at 3:00 A.M.

We also note the record belies Appellant's assertion that he was unaware of the contraband. Instantly, the arresting officer testified the suspected cocaine and the handle of the firearm located in the broken drawer was immediately apparent. *See* N.T., 1/25/13, at 31-32. Indeed, the television Appellant was watching was on top of the same broken dresser containing the cocaine. *Id.* at 31. The record further established that the doorway to the bathroom was open, the trash bag in the bathroom was left open, and the vials and marijuana in the trash bag were similarly in plain view. *Id.* at 36, 39. Thus, we detect no merit to Appellant's assertion that he had no knowledge of the narcotics or firearms.

In sum, we discern no error in the trial court's determination that Appellant and the co-defendant were not mere social visitors. Rather, based on the totality of the circumstances—including the nature of the apartment and the indicia that it was exclusively used to store contraband for sale—we conclude that the court was entitled to find that Appellant and the co-defendant constructively possessed the contraband. In contrast to ***Rodriguez*** and ***Jenkins***, there was no evidence an identified party used the apartment to sell drugs or was responsible for packaging the drugs. Accordingly, we discern no merit to Appellant's arguments that the absence of evidence regarding his connection to the apartment or the contraband warranted relief.

Lastly, Appellant claims his sentence, which was based on the mandatory minimum sentence under 42 Pa.C.S. § 9712.1, is illegal under **Alleyne**. Appellant's Brief at 45. The Commonwealth does not object to resentencing without reference to Section 9712.1. Commonwealth's Brief at 24-25.

This Court has held that Section 9712.1 is unconstitutional in its entirety. **See Commonwealth v. Newman**, 99 A.3d 86, 103 (Pa. Super. 2014) (*en banc*). Moreover, an **Alleyne** challenge is available to defendants whose cases are on direct appeal. **See id.**; **Commonwealth v. Riggle**, ___ A.3d ___, ___, 2015 WL 4094427 at *4 (Pa. Super. July 7, 2015). Therefore, we remand for resentencing "without consideration of any mandatory minimum sentence."[12] **See Newman**, 99 A.3d at 103. Accordingly, we affirm the convictions, vacate the judgment of sentence, and remand this matter for resentencing.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

---

[12] We note that before trial, the Commonwealth also asserted that a mandatory minimum sentence under 18 Pa.C.S. § 7508, for the weights of the controlled substances, could apply. N.T., 1/25/13, at 6. However, Section 7508 has also been held unconstitutional in light of **Alleyne** and **Newman**. **See Commonwealth v. Mosley**, 114 A.3d 1072, 1089-91 (Pa. Super. 2015).

J.A21004/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/28/2015</u>